UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHARON V. GRADY,<br><br>         Plaintiff<br><br>v.<br><br>HARTFORD LIFE & ACCCIDENT<br>INSURANCE COMPANY,<br><br>         Defendant | )<br>)<br>)<br>)<br>)    Civil No. 08-339-P-H<br>)<br>)<br>)<br>)<br>) |

*MEMORANDUM DECISION AND ORDER*
*ON DEFENDANT'S MOTION TO AMEND SCHEDULING ORDER*

The defendant objects to the Standard Track scheduling order that the court issued in this case, *see* Scheduling Order (Docket No. 8), arguing that because this action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, it is not the proper subject of a scheduling order that provides for initial disclosures, discovery, expert reports, and an evidentiary hearing, *see* Defendant's Objection to Scheduling Order and Proposed Alternative Scheduling Plan ("Motion") (Docket No. 9) at 1-2. It urges the court to adopt instead a scheduling order modeled on the local rule in effect for ERISA benefits cases in the United States District Court for the District of New Hampshire. *See id.* at 2.

At a conference with counsel held on January 23, 2009, I informed the parties that I would treat the defendant's objection as a motion. *See* Report of Conference of Counsel and Order (Docket No. 12) at 2. I set a briefing schedule and directed the plaintiff to address not only the defendant's request to amend the scheduling order but also the nature of any extra-record discovery that she seeks and the bases for allowance of such discovery. *See id.* She did

1

so and filed a request for oral argument, which I granted. *See* Plaintiff's Response to Defendant's Motion To Amend Scheduling Order, and Request To Conduct Extra-Record Discovery ("Response") (Docket No. 15); Plaintiff's Request for Oral Argument (Docket No. 17); Order (Docket No. 18). On February 11, 2009, the defendant also filed the Administrative Record ("Record") under seal. *See* ECF Docket (entry of February 11, 2009). I heard oral argument on both the defendant's request to modify the scheduling order and the plaintiff's request for extra-record discovery on March 9, 2009.

With the benefit of that oral argument, and for the reasons given below, I now grant the defendant's motion to amend the scheduling order, with the proviso that I decline to adopt the model predicated on the New Hampshire local rule, and grant in part and deny in part the plaintiff's request for extra-record discovery.

### I. Request for Extra-Record Discovery

The scheduling order entered in this case, which permits and contemplates discovery, is indeed inappropriate in the context of a suit of this kind. Discovery is the exception, rather than the rule, in an appeal of a plan administrator's denial of ERISA benefits. *See, e.g., Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003) ("The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed.").[1] The plaintiff acknowledges that "when it comes to discovery in a case involving review of an ERISA benefits determination, the law in this circuit is set by *Liston*[,]" pursuant to which she must offer "at least some very good reason . . . to overcome the strong presumption that the record on review is limited to the record before the administrator." Response at 2 (quoting *Liston*, 330 F.3d at 23);

---

[1] In cases in which, as here, a plan administrator has discretion to determine eligibility for, and entitlement to, benefits, *see* Motion at 3, "the district court must uphold the administrator's decision unless it is arbitrary, capricious, or an abuse of discretion[,]" *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 125 (1st Cir. 2004) (citation and internal quotation marks omitted).

2

*see also, e.g., Achorn v. Prudential Ins. Co. of Am.*, Civ. No. 1:08-cv-125-JAW, 2008 WL 4427159, at *3 (D. Me. Sept. 25, 2008); *Dubois v. Unum Life Ins. Co. of Am.*, No. CIV. 08-163-P-S, 2008 WL 2783283, at *2 (D. Me. July 14, 2008).

The plaintiff points out that, as in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008), the defendant had an inherent structural conflict of interest in deciding her case in that it was both the claims administrator and payor. *See* Response at 2; *Glenn*, 128 S. Ct. at 2346 (holding that a dual role in which an employer or insurer "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . creates a conflict of interest" and that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits[,]" although "the significance of the factor will depend upon the circumstances of the particular case").[2] Against that backdrop, she seeks to discover: (i) whether the defendant has a history of biased claims administration, (ii) how the defendant manages its structural conflict of interest of being both adjudicator of claims' merits and payor of claims, and (iii) whether in this case the defendant's review of denial of the plaintiff's benefits was irregular and unfair. *See* Response at 3.

The First Circuit has recognized that, in some cases, a claim of bias or corruption might justify extra-record discovery. *See Liston*, 330 F.3d at 23. However, it has rebuffed a plaintiff's

---

[2] At oral argument, counsel for the plaintiff contended that it might be appropriate for the court to apply a "modified" abuse-of-discretion standard of review depending on the degree to which the defendant's inherent conflict of interest influenced its decision. As the defendant's counsel rejoined, *Glenn* makes clear that, while the existence of a conflict of interest is a factor to be taken into consideration, it does not alter the standard of review. *See Glenn*, 128 S. Ct. at 2350 ("Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion."); *Leger v. Tribune Co. Long Term Disability Ben. Plan*, __ F.3d __, No. 08-1362, 2009 WL 579246, at *6 (7th Cir. Mar. 9, 2009) ("Contrary to [the plaintiff's] claims, the Court's decision in *Glenn* did not create a new standard of review – a 'heightened arbitrary and capricious standard' – for claims involving a conflict of interest.") (footnote omitted).

3

bid for discovery in circumstances in which "[t]here was no serious claim of bias or procedural misconduct" toward the plaintiff. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005).

The plaintiff supplies three reasons for the requested discovery. *See* Response at 3-6. I consider each in turn.

     1.     <u>Alleged Selective Review of Records on Reconsideration</u>. The plaintiff asserts that, on reconsideration of its decision to terminate her long-term disability benefits, the defendant reviewed only the records of Drs. Timothy Manahan and Susan Hage, ignoring numerous other medical reports and documentation, and "[r]emarkably" concluded that she was capable of sedentary work even though a functional capacity evaluation ("FCE") on which it relied was inconclusive, Dr. Manahan had said in a phone interview that her work capacity was "less than sedentary," and Dr. Hage offered no opinion about her work capacity. *See id*. at 4.[3] She argues that the defendant's approach is suggestive of bias, establishing good cause to discover facts about its "apparent selectivity with respect to review of medical documentation and its reliance on an FCE that is inconclusive and makes unsubstantiated attacks on Plaintiff's honesty and willingness to cooperate." *Id*.

As the defendant suggests, *see* Defendant's Reply Memorandum in Support of Its Motion To Amend the Scheduling Order ("Reply") (Docket No. 16) at 3, the plaintiff's characterization of its records review is not a fair one. For the proposition that the review was selective, the plaintiff relies on the contents of a medical records review performed for the defendant by Andrea Wagner, M.D. ("Wagner Records Review"), of University Disability Consortium ("UDC"). *See* Response at 4; Record at 95-107. However, the defendant's letter to the

---

[3] Timothy Manahan, D.O., a specialist in osteopathic manipulation, began treating the plaintiff on January 2, 2003. *See* Record 142, 144, 146. Dr. Manahan referred the plaintiff to Susan M. Hage, D.O., of Medical Rehabilitation Associates, for several physiatric consultations, commencing on November 25, 2003. *See id*. at 437-46.

plaintiff's counsel explaining its decision to uphold the termination of benefits indicates that the Wagner Records Review was not the sole document on which it relied in reaching that conclusion.  *See* Record at 113 ("We considered all of the information including MRI's and other testing, along with the deposition of Dr. Manahan taken on October 12, 2004, with regards to your client's history. . . .  In taking all of the information contained within the file including the Medical Consultant's assessment we conclude and agree that your client would be capable of performing an occupation that is primarily sedentary at the time benefits terminated.").

In any event, the Wagner Records Review itself indicates that Dr. Wagner reviewed not only the records of Drs. Manahan and Hage but also primary care physician records, *see id.* at 96, gynecological records, *see id.* at 95-96, records from a rheumatology consultation, *see id.* at 96, physical therapy records, *see id.*, emergency room records, *see id.* at 98, laboratory studies, *see id.*, a transcript of a deposition of Dr. Manahan, *see id.* at 99-102, claim notes, *see id.* at 103, out-of-work notes, *see id.*, workers' compensation records, *see id.*, and the FCE, *see id.*, and that she had conversations with Drs. Manahan and Hage, *see id.* at 103-05.  Tellingly, the plaintiff identifies no specific record information that the defendant failed to review.  *See* Response at 3-4. Her quest for discovery based on the asserted selective review of information falls short of qualifying as a serious claim of bias or procedural misconduct.

Nor does the plaintiff succeed in raising a specter of bias predicated on the Wagner Records Review's "[r]emarkabl[e]" conclusion that she retained the capacity to work in a sedentary job.  Response at 4.  While the FCE found that the plaintiff demonstrated an "inconsistent effort," as a result of which "her actual physical capabilities must be left to conjecture[,]"it also stated that "most sedentary level jobs simply require a tolerance for sitting and hand use, both of which [the plaintiff] demonstrated[,]" and that "[a]t a minimum, [the

5

plaintiff] can work at least to the levels identified within this report." Record at 240 (capitalization omitted). Further, while Dr. Manahan told Dr. Wagner in a phone call that the plaintiff's functional capacity was at "less than a sedentary level due to her pain complaints[,]" *see id*. at 104, he had stated in a deposition taken in October 2004, which Dr. Wagner reviewed:

> I'm saying I think it would be great to have her try and do some work. I think she'd be happy to do it, too. She would have to be in a job where she probably has that option to sit and stand and it would have to be barely any lifting and not a lot of repetitive-type usage of any of her limbs really, no bending, lifting, no repetitive bending, no repetitive squatting, no ladders, no overhead work.

*Id*. at 205-06.

The plaintiff's premise that the defendant's appraisal of her functional capacity was essentially unsupported by the records reviewed, demonstrating bias, does not fairly characterize the record. Discovery hence is not warranted on that basis.

2.  <u>Alleged Evidence of Bias With Respect to Dr. Wagner's Review</u>. The plaintiff next argues that she demonstrates good reason for discovery based on the defendant's suspected corporate interrelationship with UDC. *See* Response at 5. She cites the defendant's corporate disclosure statement and a page in the record in which the defendant's corporate logo appears at the top of a UDC referral form. *See id*. She contends, "That the Hartford corporate logo is at the top of the University Disability Consortium's referral form is a very good reason to discover it[s] relationship to Hartford, how much it is paid, and whether its services routinely result in the denial of claims." *See id*. For that proposition she cites *Achorn*, *see id*., in which Judge Kravchuk permitted limited discovery targeted at medical review or referral entities, *see Achorn*, 2008 WL 4427159, at *6.

In addition, at oral argument, the plaintiff's counsel pointed out that the referral form in question is captioned, "University Disability Consortium (UDC) Medical Consultant Program –

6

Referral Form," and that, under the heading "Physician Information," it states: "List Only Those To Be Contacted by Medical Consultant" and lists only Drs. Manahan and Hage.  *See* Record at 132.  She argued that the fact that the form refers to a medical consultant "program" and that it indicates, if not directs, that only two of her client's physicians should be contacted raises questions about the independence of UDC and the degree of control that the defendant exercises over UDC and its physician reviewers.

When asked at oral argument if he could distinguish the instant request for discovery regarding a medical consulting entity from that in issue in *Achorn*, the defendant's counsel conceded that he could not.  He argued, however, that *Achorn* was wrongly decided.

While the plaintiff in *Achorn* offered "no evidence suggesting a history of biased decision making" by defendant Prudential, Judge Kravchuk nonetheless discerned the requisite "very good reason" for discovery in the plaintiff's showing that Prudential had relied on two specific medical review or referral firms, that the record left her essentially in the dark as to the nature of the relationship between Prudential and those firms, and that Prudential, as both payor and adjudicator of her claim, had the same sort of structural conflict described in *Glenn*.  *See Achorn*, 2008 WL 4427159, at *5-*6.  Judge Kravchuk reasoned:

> In its fiduciary capacity as a claims administrator, Prudential has an obligation to seek out objective assistance when it decides that a referral for a file review or an independent medical examination is needed.  Despite Prudential's fiduciary duty to refrain from biased decision-making, however, these review or referral firms do not owe any fiduciary duties to plan beneficiaries and they also serve a market in which many of the customers are like Prudential, customers with a recognized financial interest in the outcome of any independent review or examination that is conducted by doctors within the referral networks.  How these firms go about developing and maintaining networks of physicians or other medical experts in order to serve *their* customers is therefore very relevant to the existence of procedural bias.

*Id*. at *6 (emphasis in original).  She concluded that it was "only fair that a claimant be able to obtain some information about the third-party agents who make referrals within the medical community that the fiduciary relies upon or adopts to support the denial of benefits, at least in cases where the fiduciary operates under a structural conflict of interest and has relied on the services and referrals of its own third-party agents to deny benefits."  *Id*.

Here, the plaintiff has made this showing and more.  The appearance of the word "program" on the referral form and the directive to contact only two treating sources, even if that directive did not preclude the medical reviewer from contacting additional such sources, suffice to raise questions about the nature of the relationship between the defendant and UDC and UDC's and its physician reviewers' independence.  While, at oral argument, the defendant's counsel made representations to the court concerning the nature of that relationship, there is, as he conceded, no evidence of record bearing on the matter.

That said, I decline the plaintiff's request, made at oral argument, for half-day depositions of the two claims examiners who processed her case.  The nature of the showing made here, as in *Achorn*, justifies only very limited discovery.  I will permit her to propound one set of up to 20 interrogatories, having no sub-parts, and one set of document requests on the subject matters of (i) the corporate and/or contractual relationship between the defendant and UDC, (ii) the reason why the defendant directed UDC to contact only two treating sources, (iii) the proportion of the defendant's claims sent over the past three years for physician review to UDC versus to other medical review firms, if any, and (iv) for that time period, the portion of such claims sent to UDC and to other medical review firms, if any, in which a medical review was completed and sent to the defendant, and the defendant ultimately denied the claim.  The parties shall confer and, within 10 days of the date of this order, file with the court an agreed-upon list of

interrogatories and document requests or, failing such agreement, separate lists of proposed interrogatories and document requests, in which case the court shall resolve their dispute.[4]

3. <u>Alleged Intentional Ignoring of Pertinent Information Supporting the Plaintiff's Claims</u>. The plaintiff finally contends that discovery is warranted by the fact that the defendant intentionally ignored information favorable to her. *See* Response at 5-6. Specifically, she asserts that the defendant, which happened also to be her workers' compensation carrier, knew about an independent medical examination ("IME") performed on December 15, 2003, by Susan B. Upham, M.D., M.P.H., as part of the plaintiff's workers' compensation case but failed to consider it or have it reviewed in adjudicating her disability claim. *See id*. She posits that this justifies discovery concerning why the defendant took into account information from her workers' compensation case that was helpful in denying disability benefits but ignored information from that case that supported her claim. *See id*. at 6.

While, as the plaintiff's counsel pointed out at oral argument, the record indicates that the defendant made independent efforts on February 23, 2004, and April 2, 2004, to obtain the IME, it also reflects that later in the day on April 2, the plaintiff's counsel told one of the defendant's claims handlers that she would forward information regarding the IME evaluation and current medical information. *See* Record at 271-72. In a letter to the defendant dated April 19, 2004, the plaintiff's counsel further stated: "I still have not seen a report from Dr. Upham who did the

---

[4] At oral argument, the defendant's counsel expressed concern that, if discovery is allowed in these circumstances, it will be allowed in virtually all cases, contrary to the intent of *Glenn* and *Liston*, given the industry's widespread use of medical review or referral firms. While it may be true that most insurers operate under the sort of structural conflict of interest discussed in *Glenn*, most of that subset of insurers use third-party medical review firms, and in most cases the record does not clarify the nature of the relationship between the insurer and the medical review firm and the steps, if any, taken to ensure an independent review by the medical review firm, that does not undercut the force of this court's finding in *Achorn* that this confluence of factors constitutes a very good reason for limited discovery into this murky area. As the plaintiff's counsel suggested at oral argument, the insurance industry could take steps to blunt the force of future discovery requests made in these circumstances by making these matters more transparent in the record.

section 207 workers' compensation exam. When I get a copy I will forward it to you." *Id*. at 432. In addition, as the defendant points out, the record indicates that the plaintiff's counsel did not include the IME report among additional records that she submitted when she requested reconsideration of the defendant's denial of her claim. *See* Reply at 7; Record at 138-39.

Because, as the defendant's counsel pointed out in his papers and at oral argument, (i) a claimant bears the burden of submitting information relevant to her claim, *see, e.g., Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67, 77 (1st Cir. 2005) (noting, in response to the argument that insurer failed to obtain the plaintiff's job description, that it was the plaintiff's "burden to provide evidence that he was unable to perform the duties of his occupation"), (ii) claimants have a right to discover the contents of the administrative record if they are unsure whether all relevant information has been included, *see, e.g.*, 29 C.F.R. § 2560.503-1(h)(2)(iii) (claimant is entitled, "upon request and free of charge, [to] reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits"), and (iii) the plaintiff's counsel indicated to the defendant that she would obtain and provide the IME, the failure of the defendant's own efforts to obtain that information does not constitute good cause for the requested IME-related discovery.

## II. Amended Scheduling Order

In view of the foregoing decision, the defendant's request to amend the scheduling order is **GRANTED** in part as follows:

1. Within 10 days of the date of this order, the parties shall file with the court an agreed-upon set of interrogatories and one set of document requests on the subject matters detailed above or, failing such agreement, separate sets of proposed interrogatories and document requests, in which case the court shall resolve their dispute.

2. Within 30 days of service of the plaintiff's interrogatories and document requests, as agreed upon or ordered by the court, the defendant shall file its responses thereto.

3. Within 10 days of service of the defendant's responses to the plaintiff's interrogatories and document requests, the plaintiff shall file any objections to the contents and completeness of the record. Normal response and reply times will then govern.

4. Within 30 days after the expiration of the deadline for filing objections to the contents and completeness of the record, if no such objection is timely filed, or within 30 days after the court's issuance of its decision resolving any such objection, the plaintiff shall serve on the defendant a proposed statement of material facts, which shall be in narrative form, contain record citations, summarize all procedural developments, and describe all facts pertinent to resolution of the case.

5. Within 15 days thereafter, the defendant shall serve on the plaintiff any proposed additions to or deletions from the joint statement.

6. Within 15 days thereafter, the plaintiff shall file with the court a joint statement of material facts containing all agreed-upon facts and record citations.

7. Within 15 days after the filing of the joint statement, the parties may each file separately a list of disputed facts, including record citations.

8. Within 30 days of filing of the joint statement of material facts, the plaintiff shall file a motion for judgment on the administrative record and incorporated memorandum of law limited to 20 pages.

9. Within 30 days of the filing of the plaintiff's motion, the defendant shall file its motion for judgment on the administrative record and incorporated memorandum of law limited to 20 pages.

10.    Within 15 days after the filing of the defendant's motion, the plaintiff may file a reply memorandum limited to 7 pages.

I decline to embrace the defendant's proposed scheduling order predicated on Local Rule 9.4 of the United States District Court for the District of New Hampshire. *See* Motion at 6-7. Pursuant to the New Hampshire rule, discovery is permitted, if at all, only after the court's ruling on the parties' motions for judgment on the administrative record. *See id.* Whatever the merits of such a procedure, it has not been this court's practice to handle ERISA cases in that manner.

**SO ORDERED.**

Dated this 12th day of March, 2009.

                                                   /s/ John H. Rich III  
                                                   John H. Rich III  
                                                   United States Magistrate Judge